Case number 22-5043. Tyson Brody v. United States Department of Justice. Mr. McClanahan for the appellant. Mr. Schultz for the appellant. Good morning, counsel. Whenever you're ready. Take my mask off, Dean. Understand a draw through a mask doesn't work very well. Appreciate it. Good morning, your honors. My name is Kel McClanahan. I'm here representing plaintiff Tyson Brody. I'm going to try and make this as brief as I can. This case is really just about two things. It's about the limit of the court's ability to presume good faith in agency declarations and the standards which we would hold the U.S. federal government agency in making consistent arguments. This case has been building for over 10 years. Mr. Brody originally was with a nonprofit called Keeping Government Holden. One of the reasons he formed that nonprofit was to file FOIA requests and get to the bottom of how agency records handled FOIA. Since at least 2011, the FBI has insisted every time you challenge a search that the central record system is comprehensive. It is so comprehensive that any time a plaintiff attempts to make them in court conduct a search of somewhere outside of the CRS, the court inevitably says due to the presumption of good faith and the declarant statement that this system is comprehensive, we find that this search is adequate because they just do. It has happened in over 30 cases in over 10 courts across the country from Alaska to D.C. But we have a little something different here with respect to the Hardy Declaration, though. I'm sorry, I can't hear you. We have something a little different here with respect to the Hardy Declaration because you have them indicating that we can search other places like the IMD database. And that is exactly the point. In 2015, there was a case called Mobley v. either CIA or DOJ. I don't recall which. And in that case, that was the first time this issue came to this circuit. And Judge Rogers and Judge Srinivasan asked the FBI's counsel, Thomas Byron, about this policy. Could they have to search systems outside of the CRS if they kept saying that only the CRS is comprehensive and that only it contained investigative materials? And Judge Rogers said, how does a person have to say, file another FOIA request saying, look for emails that are not in your comprehensive system? Mr. Byron said, I don't think actually that a FOIA requester is entitled to dictate the parameters of the search. Then later, Judge Rogers comes back and says, the FBI has made a judgment that 10 things are going to be useful for law enforcement purposes. That 12, 13, and 14 are not going to be useful. Is there no way to get the agency to look at 12, 13, and 14? Mr. Byron says, if a FOIA request seeks information that is not likely to be found in the law enforcement investigative context, then the agency will have to search beyond it. Mr. Brody and KGB filed a FOIA request to find out how comprehensive the CRS was. And even though it was so comprehensive that they never had to search anywhere else unless they had evidence convincing them that something was somewhere else, now all of a sudden there's so many records that are not in the CRS that it would be an unduly burdensome search for them to find it. This is where the presumption of good faith comes in. This is where we ask, doesn't the court have to look at other cases the agency's proffers and declarations and evidence in other on-point cases to find out if the declaration is entitled to a presumption of good faith? And can they offer mutually exclusive arguments in different cases and still skate by? Sounds like you're arguing for judicial estoppel, except the brief doesn't really, I mean, it's a tough standard to meet and you didn't try in the brief. It's not exactly judicial estoppel because that is a hard and fast rule. This is more of a court considering all of the evidence. If a plaintiff comes in and says, here's the witness saying the opposite thing in a declaration or another case, in a trial, that would go to the jury. It would go to impeachment. Normally it would be consider all of the evidence in the case before us. We wouldn't go rummaging to look at affidavits filed in other cases. That brings it back to the plaintiff. The plaintiff has the burden to prove that you've overcome the presumption of good faith. They have the burden of proving that the agency is not arguing something, that they say they're arguing. And yet we can't get past this. The FBI takes for 10 years, 12, 13 years, the position that they never have to search anywhere other than CRS and then says all of a sudden they cannot figure out what's not in CRS because there's so many records in CRS. The same goes for the emails with the National Archives Archivist. They deliberately constructed an unduly burdensome search. We would have to search every single employee's email in order to do a thorough search because everyone is responsible for records management. Now, is this pilot study still going on? Pardon me? Is the pilot study still going on? No, just this case because the case will be dissolved after a few years. Can I finish what I was saying? We'll give you extra. All right. We'll let you. And they – sorry, I lost track of the question. So they developed this thing. They said everybody would have to be searched in order to meet our duties under FOIA. That's not what FOIA requires. Can you imagine what would happen if I stood here in a normal FOIA case and they would say – So let's explore that. Your request at its broadest covers all of FBI. And one limiting construction which might change the request by an order of magnitude or two is IMD. Is it IMD or RMD? It used to be RMD. Now it's IMD. RMD only, right? But that might be not too burdensome. They seem to argue that it would be, but I would say definitely would not. But your position in the brief defending some sort of narrowing construction wasn't IMD only. It was IMD and a few other offices. That's because we don't know. We don't know what they do. The reason for this study is to find out what the agencies do not publicly disclose on their own volition about how they do this stuff. It is true that IMD is probably responsible for the lion's share of this correspondence, but there may be one or two other offices. We don't know. They don't say. That's why we have this. We can't just file 54 requests, one for each office that we find in the organization chart. They would say, oh, you're in control of these. But if it's broader than IMD, RMD, then it at least raises the possibility of what they say, what Hardy says, which is it may not be everyone in FBI, but sort of figuring out who might have responsive documents is unduly burdensome. And we can't just focus on IMD. That is a fair point in the abstract. As concrete as you would apply it, though, this is something that there's two counterarguments. Number one is even if they had to search everyone in FBI, they would have everyone in FBI searching their own email records for one or two addresses. It would not be an unduly burdensome search. It would take an all-agency email, and it's done. That's how FBI does FOIA. The second thing, though, is that we're arguing that they cannot, when they want to refuse to process a request, deliberately construct something that would yield a perfect response when, as I was getting to before we sort of sidetracked, if they had just searched CRS for something and I tried to make them search somewhere else, can you imagine what you as a panel would say when I said, but they didn't uncover every record, but they didn't ask every single person at the FBI? You would say that is insane. They can't have to do that. It is perfectly adequate because adequacy is what you measure. They can't kneecap themselves to show how burdensome something was unless they would be required to do that perfect search in another case. And my time has gone way past and I can't address anything else. Do you have any basis for discrediting the Hardy affidavit? Pardon me? Any basis for discrediting the Hardy affidavit? Just everything else he said in every other case. The CRS is either comprehensive or it's not. They have to search everywhere or they don't. It's mutually exclusive with all the other affidavits in all the other 30-plus cases. Thank you. We'll give you some more time. Thank you for this. We'll give you some more time. We'll give you some more time. Let's, let's begin quickly with our first question. Benjamin Schultz. May it please the court, Benjamin Schultz on behalf of the Department of Justice. I want to focus first on the issue about the central record system. I think that was the main focus. You can speak up if you're talking through the mic. Can you hear me better if I get closer to the mic? Sorry, Your Honor. So focusing on the central record system, I think there's a little bit of confusion about what is going on in this case. What the FBI explained in its declaration, and what OIP concluded when planning to file its administrative appeal, is that while there is a way to determine sort of as a first cut which FBI emails were uploaded into the central record system and which ones weren't, it was only a first cut analysis. Sometimes there are going to be mistakes. People might initially designate something as a record only later to conclude that it's not, or initially think that something is a record only later to, or only, sorry, initially think that something isn't a record only later to conclude that it is. And what OIP expressly asked plaintiffs, they said, is it okay if we look at that first cut analysis that's in the email system, or do you actually want us to do this massive cross-reference where we search 106,000 pages of email, email by email, to be absolutely, perfectly sure which ones are in the central record system or not? And the plaintiff said, no, we want absolute perfection. We really want you to do this massively burdensome search. And there's no inconsistency at all between the FBI saying, look, we think the CRS is a really, really good system. Sometimes there are mistakes. Nobody's perfect. But we think it's… What about the IMD system? Sorry? What about the IMD system? I'm sorry, I'm not quite sure that… I guess that they're also asking if you just would narrow it there. I'm not sure that they're asking to search the IMD. They asked to search FBI emails, and then they wanted to know which FBI emails were and were not. But I guess I'm asking if you're going to say it's so broad and it's so difficult and unduly burdensome and 17,000 hours, et cetera, to do that one, is there a lesser form somewhere? So one of the things that the FBI said is they went to the plaintiff and said, look, within the FBI email system, which is not the central record system, it's a separate email system. They said within the email system, there are designations, and those designations can show whether something was a record or was not a record. Now, those designations are probably pretty good. We think that they're very likely to be accurate, but they're not 100 percent perfect. Do you want to rely on those very good designations, or do you want 100 percent perfection? And they said, we want 100 percent perfection. And the problem was getting that 100 percent perfection was what was going to be unduly burdensome, and that's why the agency ultimately concluded. But do you have an obligation under the case law that if you know it's going to lead to something else that you search there or if you think that they have kind of inartfully crafted their FOIA request that you actually do have the information, do you have a duty to disclose it in the form that you believe is appropriate? So this court has cleared that it is not the obligation of the agency to rewrite the FOIA request. We just have to apply the FOIA request as written. But one of the things that the administrative process is designed to do is it's designed to have this process of accommodation where a request comes in, and then you can informally go to the requester and say, okay, this thing you requested, we're not quite sure how to interpret it. Here's one way to do it. Here's another way to do it. Are you really asking for this thing that seems really, really burdensome? And a lot of times, usually most of the time, the requesters are pretty reasonable about it. They're like, okay, no, this is really what I'm interested in. And then we work with them, and there's accommodation, and we find a more targeted way to get at what they're getting at. This plaintiff, this requester, for whatever reason, decided no, they really wanted absolute perfection, and that, the declaration explained, was something that would just be unduly burdensome. And to be clear. At that point, does that go to count four or also count three? So I think the point about them wanting the absolute perfection in the central records, that would be count four. Okay, so let's talk about count three. I mean, why wouldn't it be a pretty good approximation just to search the RMD emails? Sure. So I think two responses to that. The first is the FBI's declaration explained that even if you just limited your search to the records management division, that's over 700 employees, and the way that their email system works, you have to go employee by employee. But the plaintiff is still asking for over 700 employees' worth of email accounts being searched. But the other thing is that... But that is the FOIA office, or the records management office within FBI, right? That is the umbrella organization that is responsible for FOIA processing. They have other responsibilities as well. But, yes, that is the location of the FBI FOIA. But do you ever explain that unduly burdensome with respect to the IMD, RMD? I'm sorry. So, yeah, with respect to the records management division, the declaration does say that even within the records management division, there's over 700 employees, like 712 or 718, and they each have two email addresses. But then, furthermore, even the plaintiff doesn't think that that would have been responsive to their request. And so that means that it's not just those 700-plus employees' email addresses that you have to search one by one. It's also whichever other ones... It's also some select others, which are hard to find. Right. And, again, whatever process we would use to identify what other email addresses we would have to reasonably search, there would be some burden involved in that process, and then you'd have to actually conduct the search. And, you know, the number of people is not clear at this point, but it's going to be more than zero, probably. I'm not sure how clear that is. I mean, the jumping-off point for your worrying about breadth is Hardy saying that every employee in the FBI has records management, has obligations to preservers and such. I mean, that's obviously true, but I'm not sure it's really relevant. I mean, you know, every employee within civil appellate has an obligation under the Federal Records Act not to destroy documents that should be preserved. But no one would think that you would search civil appellate emails if someone comes in and requests, you know, civil division documents corresponding with NARA about recordkeeping. This is not something the operational arms do. There are FOIA offices that handle that. So I don't think you have to rely on that analysis to affirm the district court's reading. I think one way that you could affirm the district court's reading. You could say IMD only is too broad, right? Too burdensome. But you could certainly say that. But I'm exploring the IMD plus a select few others. Correct. We think the records management division alone, that's over 700 individual employees with two email accounts. We think that's burdensome. And then you add on whatever else you think we might have to search as part of a reasonable search, and that's additional burden. And we think that's a sufficient basis to affirm the district court's judgment. Do you have any sense of how the FBI actually handles these things? I mean, are there field offices where someone is just assigned on an ad hoc basis some responsibility to deal with NARA, and there's no central list of who that is? So you would have to look for needles in haystacks? So the declaration explains that the FBI doesn't maintain a list of employees whose official duties are interacting with the National Records and Archives Administration. Right. You know, as a practical matter, how the FBI might go about figuring out who those people are, you know, it might be a case-specific, case-by-case kind of thing. So I don't know definitively what the answer is on how they would, if, for example, if the court ordered the agency to implement a FOIA request, how they would do that. I appreciate the candor. It just seems like as a first cut, I would think that's going to be RMD, but I understand. And along with those questions, how do you ensure consistency in the response? So I'm not quite sure how to answer that question, because as far as I understand it, the inconsistency that the plaintiff has been focusing on is a supposed inconsistency with how the agency treats the central record system. And I want to be absolutely clear that there is no inconsistency. We think the central record system is a comprehensive system. It's everything that we think we've said it is. It's not a completely perfect system. I don't know that we've ever said that it is 100 percent perfect. And one of the things we asked the plaintiff here was, do you truly want to know, is this system, you know, to get 100 percent perfection in figuring out what is and isn't in the system? And they said, yes, we want 100 percent perfection. And there's nothing inconsistent about us saying, look, we think the system is really good. We acknowledge it's not 100 percent perfect. So you're indicating that you have to go there. There's not a way to somehow minimize the search if somebody asks for a more narrow request. Well, the thing that the FBI and OIP on the administrative appeal said to the plaintiff is we said, look, there is a way that we could look at just the email system and there's a record marking tool. We can take a first cut analysis within that system at what was marked as a record and what wasn't. And that might be a really good approximation of what was in CRS. Things that were marked as record probably ended up in CRS. Things that were not marked as record probably didn't. But to be 100 percent sure, we would then have to do the second step of doing this massive cross-check. And that's why we asked the plaintiff, are you really asking us to do this massive cross-check to get from a pretty good approximation to 100 percent perfect? And they said, we want 100 percent perfect. Thank you. Thank you, your honors. Y'all have asked most of the questions that I wanted you to ask. So I just have a few rebuttal points to what they said or what the counsel said in response. The first thing is they keep focusing on this first cut. The way that they found it, they said, well, it looks like RMD has most records. Oh, sorry. It looks like, you know, can we just go by the tag that's in it? And they said, well, the plaintiff, for whatever reason, insisted that it be perfect. Have you ever seen a FOIA case where the plaintiff insisted that a search be perfect and yet the agency still successfully defended a less than perfect search? They deliberately chose to refuse to process it because they could not provide perfection. If that were the standard, you would have far less summary judgment cases because the agency would never perform a search that the plaintiff did not insist on. That is deliberately choosing to dodge FOIA. It seems a little bit different if that dispute is being aired out after the fact. They do the search. You say they didn't do enough. They say we did. That's how that issue usually comes up. That seems a little bit different from what we're talking about here, which is you make a facially broad, burdensome request. They come back to you and say, hey, can we do something a little bit narrower? And you say no. That's exactly what happened in the Moley case that Judge Rogers was talking about, where the part I elided over was when Mr. Byron talked about the e-mails that I sent him about it. That was all pre-litigation. That was all administrative state. And my time is up. Go ahead. And so the point here is that the agency, if they had come before you or before the district court and said we only searched for the things that had the tag CRS, would you have given that summary judgment? Would the district court have given that summary judgment? Probably. They didn't do that. They did not do the search that they knew they could get away with doing because they didn't want to process it, because they didn't want to show, for whatever reason, that there's a lot of stuff not in CRS that they've been telling every court they don't have to look for. And this goes to the last point, which is, you know, they talk about having a list. They don't have a list of everybody who deals with NARA. Well, they don't have a list of everybody on hand that deal with every topic they get a FOIA request for. That is the job of the FOIA office, is to develop such a list. They even said that would be creating records. We can't be required to compile a list of possible record holders. That's what they do. The absence of the list is a measure of how burdensome it's going to be to comply with the search. I don't think so. I think that... With your request. I think that even if you assume that IMD were the proper place for that request, that it would only be IMD, it wouldn't be everybody in IMD. They are deliberately inflating the amount of time it takes to do this, saying that they'd have to work for 30 minutes on every email to figure out if it was in the CRS, saying that everyone in the agency would have to search their emails, or that everyone in IMD would have to search their emails. Most of the people in IMD have nothing to do with record keeping. They have to do with FOIA and classification and stuff like that. They're feeding the court a parade of horribles, and there was no room given for the possibility that they were not acting in good faith because they wanted to not process these FOIA documents. They wanted to not preserve the records. They didn't have to find all the records to preserve. They just had to say, hey, if you have records like this, preserve them. Five-minute email across the entire agency, and I have nothing to do with it. Any questions? No. Thank you. Thank you very much. Case submitted.
judges: Katsas, Childs, Ginsburg